IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SENIOR SETTLEMENTS, LLC, | | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | | Civil No. 05-777 (JBS) |
| v. | | |
| | | **MEMORANDUM OPINION** |
| GROWTH TRUST FUND, et al., | | |
| Defendants. | | |

**Simandle, District Judge**:

1.    This matter is before the Court on the motion [Docket
Item 46] for reconsideration by Plaintiff Senior Settlements, LLC
("Senior Settlements" or "Plaintiff") of the Court's February 27,
2008 Opinion and Order denying Plaintiff's motion for partial
summary judgment and granting Defendants' motion for partial
summary judgment.  Senior Settlements, LLC v. Growth Trust Fund,
Civ. No. 05-777, 2008 U.S. Dist. LEXIS 15639 (D.N.J. Feb. 27,
2008).

2.    Local Civil Rule 7.1(i) of the United States District
Court, District of New Jersey, governs Plaintiff's motion for
reconsideration.  Rule 7.1(i) requires the moving party to set
forth the factual matters or controlling legal authorities it
believes the court overlooked when rendering its initial
decision.  L. Civ. R. 7.1(i).  Whether to grant a motion for
reconsideration is a matter within the Court's discretion, but it
should only be granted where such facts or legal authority were

indeed presented but overlooked.  See DeLong v. Raymond Int'l

Inc., 622 F.2d 1135, 1140 (3d Cir. 1980), overruled on other

grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981);

Williams v. Sullivan, 818 F. Supp. 92, 93 (D.N.J. 1993).  To

prevail on a motion for reconsideration, the movant must show

either

> (1) an intervening change in the controlling
> law; (2) the availability of new evidence that
> was not available when the court . . .
> [rendered the judgment in question]; or (3)
> the need to correct a clear error of law or
> fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d

669, 677 (3d Cir. 1999).

3.  In granting partial summary judgment to Defendants and

denying it for Plaintiff, the Court determined that no contract

existed between the parties for four key reasons.  First, the

Court found that the initial offer from Senior Settlements

contained an essential term that was not waived: it expired on

July 23, 2004.  Senior Settlements, LLC v. Growth Trust Fund,

2008 U.S. Dist. LEXIS 15639, at *14 ("Because the time for

acceptance was specified in the offer, because the time was

deemed to be 'of the essence,' and because the offer was not

accepted before that time expired, there was no contract formed

at that time, under the undisputed material facts.")  Second,

when Defendants attempted to accept the offer on August 10, 2004

they effectively communicated a counteroffer.  Id., at *22.

Third, there was no acceptance of that counteroffer because although Senior Settlements took steps to perform, none of those steps was communicated to Defendants.  Id., at *25 ("there was no manifestation of Senior Settlements' assent to the counteroffer . . . prior to [November 2004]").  Fourth, Defendants revoked their counteroffer on October 28, 2004, prior to receiving any benefit from Senior Settlements.  Id., at *27 ("The Court finds that the counteroffer by the Trustees was revoked by Michael Steinmetz in his letter of October 28, 2004, on behalf of all of the trustees.").

    4.  Senior Settlements argues that this Court's finding that an agreement did not exist between the parties prior to Defendants' revocation of their counteroffer was an error of law and fact because the Court overlooked or misapprehended key facts in reaching its conclusion.  Specifically, Senior Settlements claims the Court was mistaken when it found that (1)Senior Settlements failed to sign the agreements it sent to Defendants in order to avoid being bound; (2) Senior Settlements did not accept the counteroffer by conduct; (3) Defendants continued to pay their premiums on the plan after communicating their counteroffer; and (4) a communication from Senior Settlements to its broker was a communication between the parties.  Each of these matters will be discussed in detail below, but none of them changes this Court's determination that no contract existed

between the parties and that partial summary judgment was appropriate for Defendants.

5.   In the February summary judgment motion practice, Defendants had argued that Senior Settlements never communicated a valid offer because by its terms the offer said Senior Settlements' signature was required and there was no dispute that the initial offer was never signed by Senior Settlements.  This Court declined to address the significance of the lack of signature because it was clear that the offer had expired prior to Defendants' attempted acceptance.  "The Court need not resolve the issue of the signature [because] even if there had been a signature on the offer, the offer was not open when the Trustees attempted to accept it by signing and returning it on August 10, 2004."  Id., at *14.  Thus, legally, the issue of whether a valid offer existed at the time of attempted acceptance was determined not by the lack of a signature but by the lapse of the time required for acceptance.  However, in its recitation of the evidence, the Court noted that deposition testimony from a Senior Settlements employee indicated that Senior Settlements intentionally neglected to sign its offers in order to avoid being bound by them if they were accepted by offerees.  Senior Settlements takes issue with the Court's conclusion that deposition testimony indicated that as the motive for failing to sign.  Senior Settlements now argues that the deponent, who said

4

the offer was not signed "on advice of counsel," did not imply anything more than what he said.  The construction of the statement was irrelevant to the Court's decision and it shall only briefly address it here.  Suffice it to say, even if failure to sign was merely a mistake, that would have had no consequence for purposes of determining whether an offer was open and a contract was formed between the parties, as the Court explicitly stated in its prior Opinion.  This Court's determination was a legal, not an equitable one, and the failure to sign as well as the motives for the failure to sign were of no moment to the finding that the offer had expired by its own terms.  In fact, the Court would have made the same conclusion, as a matter of law, had the offer been signed.  The issue was the expiration of the time for acceptance, as was made clear in the February summary judgment Opinion.  The Court need not reconsider its determination that the initial offer expired before Defendants attempted to accept it and that, therefore, their belated attempt at acceptance was a counteroffer.

6.  However, on the evidence before the Court it is apparent that Senior Settlements intentionally failed to sign their offers in order to avoid being bound when they were accepted.  No reasonable jury could find otherwise.  The initial offers included a clause that required the documents to be signed in order to be valid offers.  (See Disputed Agreements at ¶ 19)

("This agreement has been executed first by the Purchaser as an offer to purchase the Policy hereunder . . . .")   The evidence showed the that offers were not signed and that this was no mistake; rather, Senior Settlements declined to sign them before sending them out "on advice of counsel," as Plaintiff concedes. The only meaning of the "offers" then, as a matter of law, was that they were not offers at all, at least not until they were signed, but that they were invitations to make offers.   Plaintiff admits that the failure to sign was intentional and was done on advice of counsel and no evidence was offered from which a jury could find otherwise.   In fact, Plaintiff has provided no alternate explanation or evidence of its failure to execute the purported offers.   A reasonable jury could not glean anything from this evidence other than that Senior Settlements did not intend to be bound when Defendants accepted their unsigned "offers," which were really invitations to make an offer. Instead, "on advice of counsel" Senior Settlements sent out form contracts, unsigned, in order to be able to accept or reject the signed forms when they were returned signed by Defendants. Perhaps this was because, as the forms state, time was of the essence in consummating this deal.   The reason is not important. The fact is the forms were not signed, Plaintiff did not intend them to be offers, that is did not intend to be bound, and, dispositively, even if they had been signed offers, the offers

expired by their own terms before Defendants accepted them.

Therefore, there is absolutely no reason to reconsider the

Court's earlier determination that there was no contract when

Defendants belatedly signed and returned the disputed agreements.

That act by Defendants was an offer, which, as explained below,

Plaintiff never accepted.

     7.   Senior Settlements asks the Court to reconsider its

determination that there was no acceptance by conduct

communicated to Defendants because, Senior Settlements claims,

the Court overlooked the fact that Defendants signed change in

ownership forms on the insurance policies in September 2004 after

communicating the counteroffer and before revocation.  Senior

Settlements argues that this evidence shows Defendants knew that

Senior Settlements was accepting the counteroffer – or at least

creates a material issue of fact on that point.  Senior

Settlements further argues that the Court was mistaken in finding

that Defendants' continued payment of the premiums on the

policies showed they did not think ownership had transferred

because, Senior Settlements claims, Defendants did not actually

continue paying the premiums.

     8.   This Court finds that the argument about the change in

ownership forms is not a proper basis for a motion for

reconsideration because it was considered and rejected by the

Court in its prior Opinion.  The Court did not overlook this

argument or the fact of Defendants' execution of the forms in
September.  A motion for reconsideration is improper when it is
used solely to ask the court to rethink what it has already
thought through – rightly or wrongly.  <u>Oritani Savings & Loan
Assoc. v. Fidelity & Deposit Co.</u>, 744 F. Supp. 1311, 1314 (D.N.J.
1990), <u>rev'd on other grounds</u>, 989 F.2d 635 (3d Cir. 1993).  Nor
is reconsideration warranted when the moving party simply
recapitulates arguments considered by the court prior to
rendering its initial decision.  <u>Carteret Sav. Bank v. Shushan</u>,
721 F. Supp. 705, 706-07 (D.N.J. 1989).   The argument about the
forms was presented to the Court on the prior motion and
rejected.  Rather than overlooking this evidence, the Court
actually found that it was true:

> In mid- to late September, the designation of
> ownership of the policies was changed to
> Senior Settlements.  (PUMF ¶ 23.) Defendants
> had signed change of beneficiary and ownership
> forms in early September, and, at least as to
> the AGI policy, Defendants reiterated that
> request in late September when they sent
> additional documentation requested by AGI to
> effectuate the change.  (Exs. GG, HH & II to
> Pl's Opp. to Defs' Mot for Summ. J.)  At oral
> argument, counsel for Senior Settlements
> indicated that Senior Settlements sent in the
> change of ownership forms. (Tr. at 11:24-25.)
> Thus, it is not clear that Defendants were
> aware that the change of ownership forms were
> sent to the insurance companies or that the
> change actually occurred, as Defendants
> continued paying the premiums on the policies.
> (Fede Dep. 96-99, Pl.'s Ex. H.)  There is no
> evidence that Plaintiff communicated anything
> to Defendants at that time.   Further,
> Plaintiff made no payment to Defendants at

> that time.  Soon a dispute arose regarding
> whether a contract had been formed and
> whether, if it had, Defendants could rescind
> it.

Senior Settlements, 2008 U.S. Dist. LEXIS 15639, at *6-7.  To

make it more clear, the Court found that Defendants executed all

the necessary forms to facilitate the purchase of their policies

by Senior Settlements, including the forms they received in

September, but that those executions communicated a counteroffer

to Senior Settlements that it never effectively accepted because

it did not inform Defendants, by words or deeds, of its

acceptance.  See id., at *26 ("Plaintiff argues that other

conduct by it, including transferring ownership of the policies

and removing money from them, constitutes acceptance by

performance. This would be so if any of these acts had been

communicated to Defendants.").  There is no dispute of fact that

the transfer of ownership was not communicated to Defendants.

Id., at *9 (noting that concession by Plaintiff at oral

argument).  An acceptance occurs when a party assents, through

words or conduct, to the essential terms of an offer.  Weichert

Co. Realtors v. Ryan, 128 N.J. 427, 435-36 (1992).  But

acceptance by conduct requires that performance be somehow

communicated or made known to the offeror.  Id.  In this case,

Senior Settlements sent the ownership transfer forms in on its

own.  Senior Settlements, 2008 U.S. Dist. LEXIS 15639, at *7 ("At

oral argument, counsel for Senior Settlements indicated that
Senior Settlements sent in the change of ownership forms.").  Had
it copied Defendants on those communications or paid Defendants
for their policies, that would have been sufficient to
communicate their acceptance.  Instead, Plaintiff acted
unilaterally and Defendants were left in the dark about whether
Senior Settlements was going forward with the deal.  Because
Senior Settlements never communicated acceptance prior to
Defendants' revocation of the counteroffer, no contract was
formed.

9.   Thus, the Court finds that even if the Court was
mistaken in determining that Defendants continued to pay their
premiums, the Court would still find that there was no contract
because no conduct constituting acceptance or performance by
Senior Settlements was made known to Defendants prior to
revocation of the counteroffer.  In this case, Senior Settlements
is arguing, at most, that it accepted the counteroffer by partial
performance – transferring ownership of the policies.  The Court
has already explained that no part of Senior Settlements'
performance was ever communicated to Defendants, and Plaintiff
has admitted as much.  The lapse in premium payments that Senior
Settlements alleges here does not change those facts.  Senior
Settlements never told Defendants that it had accepted its
counteroffer and there is no evidence - even now - that its

conduct was known or calculated to be known to Defendants.

Rather, the alleged lapse in payments further bolsters this

Court's determination that the parties were confused about the

status of their agreement prior to revocation of the counteroffer

by Defendants.  Defendants neither received notice from Senior

Settlements of acceptance nor received any benefit from Senior

Settlements.  Accordingly, there was no acceptance by

performance.

     10.  In addition, Senior Settlements cannot present evidence

to the Court now that was available to it at the time of the

prior motions but that it chose not to present.  Whether to grant

reconsideration is a matter within the district court's

discretion, but it should only be granted where facts or legal

authority were indeed presented but overlooked.  DeLong Corp. v.

Raymond Int'l Inc., 622 F.2d 1135, 1140 (3d Cir. 1980), overruled

on other grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir.

1981); Williams v. Sullivan, 818 F. Supp. 92, 93 (D.N.J. 1993).

Senior Settlements' agent admitted in a deposition presented to

the Court on summary judgment that Defendants unnecessarily paid

the premiums on the policies after August 10, 2004 and that

Senior Settlements was aware of that.  Senior Settlements never

argued that such a statement was disputed.  Altough the issue of

premium payments is not relevant to the Court's continued

determination that no contract existed, Senior Settlements should

not now raise evidence and issues that it could have raised
earlier but which it failed to do, for reasons of its own.  This
is not a second motion for summary judgment.

11.  Finally, Senior Settlements argues that the Court erred
when it found that an e-mail to Anthony Kidd, which indicated
that Senior Settlements reserved the right to change the terms of
its offer, was an e-mail to an agent of Defendants.  Senior
Settlements now claims that this communication did not create
uncertainty in the price terms of its initial offer because
although the Court believed the e-mail was sent to Defendants, it
was not – it was sent to one of Senior Settlements' employees.
While it appears that the Court did misapprehend the relationship
between Kidd and the Trustees, that fact does not change the
Court's finding, as a matter of law, that the original offer
expired by its terms prior to Defendants' acceptance.  Had that
email been sent to the Defendants, it would have created
additional uncertainty in the dealings between the parties.  But
as it stands, the failure of Defendants to execute and return the
offer within the time frame noted as being "of the essence" by
the offer itself deprived Defendants of the power of acceptance
of that offer, as explained fully in the prior Opinion.  Senior
Settlements, 2008 U.S. Dist. LEXIS 15639, at *15. "In light of
the fact that time was of the essence in the original offer, the
Court determines that the offer had expired before Defendants

attempted to accept it."  Id., at *20.  Thus, as a matter of law, Defendants' belated communication to Senior Settlements made that communication a counteroffer, notwithstanding the Court's misapprehension about the e-mail to Anthony Kidd.  Even absent a communication to Defendants that Senior Settlements might change the offer terms, the offer expired because it was constructed with an explicit, essential time limit.  No waiver of that limit was ever communicated.  See id., at *19-20 ("The Court finds that Senior Settlements could have waived its insistence on the specific time for acceptance by negotiating with Defendants and explicitly agreeing to extend the time limit, or by otherwise accepting the counteroffer in a reasonable time by performance or otherwise . . . Because there was no explicit or implicit extension of time in this case, there was no contract when Defendants belatedly accepted the offer.").  Therefore, the misapprehension about the Kidd e-mail does not change the Court's decision.

12.  Accordingly, the Court shall deny the motion for reconsideration in its entirety.  An appropriate Order shall be entered.


**May 9, 2008**                              **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             U.S. District Judge